Valmond Calvey alleges that, without cause or provocation, on October 17, 1942, he was assaulted by Sandy Jones and severely beaten with a heavy stick.
He avers that he was "beaten to the ground" and "suffered intense pain, both physical and mental; that he bled profusely from the wounds on his head and forehead and from the ear; that he was compelled to employ a doctor for the purpose of stitching his wounds and giving him necessary medical attention." He seeks judgment against Jones for $1,831.50. Jones denies all of the allegations of plaintiff's petition. He makes no special defense of provocation or justification. From a judgment dismissing his suit, Calvey appeals.
The record shows that plaintiff, a Negro rice farmer in the Parish of St. James, finding it necessary to obtain the services of one Ed Geason to haul certain sacks of rice, discussed the matter with Geason and found it difficult to agree on a price to be charged for the hauling. Whether an agreement was reached is not made clear by the record, but it does appear that during or before the discussion a few sacks of Calvey's rice had been loaded into the cart of Geason. Shortly thereafter Calvey noticed that defendant Jones, an employee of Geason, had thrown these sacks of rice from the cart to the ground.
He immediately remonstrated with Jones for having thrown the sacks to the ground. Just what was said is in dispute.
Shortly thereafter and at a point estimated at from 50 feet to 150 feet from the scene of the first discussion, Calvey was rather severely beaten by Jones with a "shovel handle".
It is the contention of Calvey that the discussion as to the hauling of the rice had been completely terminated when Jones came to the spot where Calvey then was and attempted to beat him with the shovel handle. It is maintained by Jones that during the discussion concerning the hauling of the rice, Calvey called him an s.o.b. and hit him with an "indigo" stick.
The district judge, in his reasons for judgment, states that, as Jones was complying with the orders of his employer, Geason, to throw Calvey's rice out of the cart, "Calvey got angry and cursed Jones". The court further finds that plaintiff "provoked the difficulty by cursing the defendant and by first assaulting defendant with a stick".
It seems to us clear that the all-important testimony in the record is that of the witness, Morris Heary, who, we are convinced, is the only person, except plaintiff and defendant, who actually saw the entire affair. *Page 837 
This witness, Heary, testifying on behalf of Calvey, plaintiff, said that Calvey had struck the first blow and we feel sure that the conclusion reached by our brother of the district court that Calvey was the aggressor, resulted from this statement. But it is made evident by the record that, although Heary may have said that Calvey struck the first blow, he did not intend to say and did not say that Calvey was the aggressor. His testimony clearly shows that, although Calvey struck first, he struck only after Jones, with a large shovel handle in his hand, had chased him for some time.
Counsel for defendant relies largely on the statement of Heary that Calvey had struck first and in his brief quotes from the testimony as follows:
"Q. Heary, who hit first? A. Calvey.
Q. And that's the truth? In other words, each one had a stick and Calvey hit first? A. Yes, sir."
But counsel and our brother below seem to overlook the earlier part of Heary's testimony which shows positively that in the opinion of Heary Jones was the aggressor. He first said that after the disagreement about the hauling of the rice, Jones picked up the stick (the shovel handle) which was behind him, and attempted to strike Calvey with it. He then added: "Calvey ran from him around the sacks of rice and he got up on the sack of rice. That's where he struck him side of the head with the stick. And he went around again and that's where he stumbled facing Sandy Jones." It appears from the record that Calvey did not have a stick in his hand until he got up on the stack made of the sacks of rice and that there he found a small "indigo" stick which is used to keep the sacks of rice apart, and that at that time Jones had the larger stick in his hand and had been attempting to strike Calvey with it. The record leaves in our minds no doubt whatever that that is the true statement of the occurrence.
Albert Jones, a relative of the defendant, we are convinced saw nothing whatever of the affair. His testimony as to the sticks which Calvey had is not borne out by any of the other witnesses and, although he gives in detail the occurrences leading up to the assault, defendant himself does not claim that this witness, Albert Jones, was present and, in fact, says that he was not.
Two other witnesses, the justice of the peace and the deputy sheriff, base their statements that Calvey was the aggressor solely on the fact that Heary had said that Calvey struck first. Neither of these witnesses saw the occurrence and neither even claims to have been present.
[1] We realize that only a question of fact is involved and for this reason we hesitate to reverse the finding of the district court, but the record leaves us convinced that Calvey was not the aggressor. Though there may have been a dispute over the handling of the rice, that had terminated and Calvey had left that particular spot and gone some distance away when he was approached by Jones who attempted to assault him with a shovel handle, and finally did so.
[2] Calvey says that he was struck five times by Jones and that it was necessary for the doctor to take "some stitches here and also in my head and give me a couple shots." The stenographer's notes indicate that the witness pointed to his forehead in giving the above testimony. He states that he visited the doctor five or six times and that bandages remained on his head for eleven or twelve days. The doctor's bill was $6.50.
Calvey could not work for twelve days. He testifies that the injuries were very painful. He says that for "ten days I couldn't rest; I didn't sleep at all; I couldn't lie on my back." He was asked if the blow on his forehead had left a scar and the record shows that he pointed to a scar on his forehead which was about two inches long. He did not produce the doctor who treated him.
His wife testified that the bandages remained on his head and eye for about six days; that he couldn't lie down and that he seemed to suffer a great deal from his injuries.
We do not think that the injuries are in any way permanent and, while they were no doubt painful for a few days, they seem to have been superficial. An award of about $300 seems to us adequate.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of Valmond Calvey, plaintiff, and against Sandy Jones, defendant, in the sum of $300, with legal interest from judicial demand.
Reversed. *Page 838